**UNITED STATES of America,**

v.

**Roberto Santiesteban CASANOVA, Marino Antonio Esteban del Carmen Sueiro y Cabrera and Jose Garcia Orellana, Defendants.**

United States District Court
S. D. New York.

Jan. 16, 1963.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for United States; Vincent L. Broderick, Chief Asst. U. S. Atty., Donald J. Cohn, Robert J. Geniesse, Asst. U. S. Attys., of counsel.

Rabinowitz & Boudin, New York City, for defendant, Roberto Santiesteban Casanova; Leonard B. Boudin, Victor Rabinowitz, Mary M. Kaufman, Henry Winestine, Michael B. Standard, New York City, of counsel.

WEINFELD, District Judge.

The defendant Roberto Santiesteban Casanova moves pursuant to Rule 41(e) of the Federal Rules of Criminal Pro-

cedure for an order directing (1) the return of papers obtained from him at the time of his arrest on the ground the arrest was unlawful, and (2) the delivery to the defendant of all records, recordings, transcripts and notes of any kind of alleged intercepted telephonic communications and the suppression of all evidence allegedly obtained by wiretapping.[1]

Essentially the defendant challenges the legality of his arrest because (a) it was not made on probable cause; (b) it was the result of unlawful wiretapping and evidence derived therefrom; and (c) he had diplomatic immunity. The last objection is disposed of by the Court's decision filed simultaneously herewith, overruling the defendant's claim of diplomatic immunity and dismissing on the merits his petition for a writ of habeas corpus.

The initial challenge is directed toward the claimed insufficiency of the complaint upon which the warrant of arrest was issued. The complaint, sworn to by an agent of the Federal Bureau of Investigation, spells out in considerable detail the charges against the defendant.[2] It specifies the nature of the two separate conspiracies charged against the defendant and others and lists four overt acts, in two of which the moving defendant is named.

In addition to the sworn complaint upon which the warrant of arrest was issued under Rules 3 and 4 of the Federal Rules of Criminal Procedure, there was also before the United States Commissioner an affidavit by the same Federal agent in support of the issuance of a search warrant pursuant to Rule 41(c). This affidavit, as well as the complaint, states that the sources of his information and the grounds for his belief with respect to the matters contained therein were an official investigation conducted by the Federal Bureau of Investigation, and a confidential source known to the Federal Bureau of Investigation, which source had furnished reliable information in the past. The affidavit goes much beyond the sworn complaint. It alleges that the defendant's entry into the United States on October 3, 1962 was for the purpose of directing sabotage on behalf of the revolutionary government of Cuba; that defendant was concealing in his premises hand grenades, revolvers and various incendiary devices, all designed for use in furtherance of a conspiracy (1) to commit acts of sabotage, and (2) to act as agents of a foreign government without prior notification to the Secretary of State, in which defendant allegedly was a participant. It continues:

> "The confidential source advised that [the defendant] directed him [the informant] to recruit various pro-Castro Cubans living in the New York area so that they might be trained as saboteurs to operate within the United States. The said [defendant] advised the confidential source that sabotage materials, including hand grenades, incendiary devices, explosive materials, detonators, revolvers and pistols, would be delivered pursuant to his direction to the workshop of Jose Garcia Orellana [another defendant] * * *."

Additional specific details giving time and place of alleged activities by the defendant in furtherance of the charged conspiracy are stated.

The Government has submitted an affidavit by the United States Commissioner, who states that he read both the affidavit and the complaint, following which the agent swore to the truth of each,

---

1. Originally the defendant also moved to dismiss the complaint and to vacate the warrant of arrest issued by the United States Commissioner for this District, but subsequent to the service of the motion papers the grand jury indicted him upon the charges specified in the complaint and he withdrew those branches of his motion.

2. The subsequently found indictment closely parallels the complaint; however, the issue as to the claimed lack of probable cause for the arrest must be determined as of the time of the issuance of the warrant of arrest. See generally, Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

whereupon he issued the warrant of arrest and the search warrant. The Commissioner, with the affiant and both affidavits before him, had a full opportunity to make an independent assessment and to "judge for himself the persuasiveness of the facts relied on by the complaining officer to show probable cause"[3] that the conspiracies charged had been committed and that the defendant was one of the co-conspirators. There was full compliance with Rules 3 and 4.

██ The fact that the Commissioner acted upon hearsay does not negate probable cause for the issuance of the warrant any more so than where an indictment returned by a grand jury is based upon hearsay information.[4] Probable cause for the issuance of a search or arrest warrant does not require that the proof submitted measure up to the same standard of evidence necessary to establish guilt upon a trial.[5] As the Supreme Court stated in Brinegar v. United States:[6]

> "There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them."

██ Upon the facts here presented, it appears that there was an ample basis upon which the Commissioner acted in issuing the warrant of arrest. Since the papers, the return of which defendant seeks, were obtained at the time of his arrest during a search of his person as a lawful incident thereof, that branch of his motion is denied.

Realistically, the main thrust of the defendant's attack rests upon the second branch of his motion, wherein he seeks to suppress all evidence on the ground that it was the fruit of unlawful wiretapping.[7] Without specificity of any kind, he alleges that his telephone conversations have been intercepted and recordings made; that it has been the practice of the Federal Bureau of Investigation in cases involving the national security to engage in wiretapping; that the term "confidential source," alleged by the agent in this case as the source of his information, is commonly used, together with similar expressions, by the Federal Bureau of Investigation "to denote or at least include illegal wiretapping." The charges are made upon information and belief. To support the charges, he relies upon a record in a national security prosecution in this District, more than thirteen years ago,[8] wherein it appeared that Government officials had engaged in wiretapping. Based thereon, and also upon hearsay statements of third persons in magazine articles, defendant concludes that the evidence referred to in the complaint and the affidavit, upon which the Commissioner acted, was derived through the illegal use of wiretaps and not from a reliable informer.

Upon the argument of the motion, the United States Attorney was of the view that the charges were so devoid of evidential support that they fell of their own weight and required neither an answer nor a hearing. The defendant

3. Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245 (1958).

4. See Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

5. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Heitner, 149 F.2d 105 (2d Cir.), cert. denied, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432 (1945); United

States v. Klapholz, 17 F.R.D. 18 (S.D. N.Y.1955), aff'd on other grounds, 230 F.2d 494 (2d Cir.), cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956).

6. 338 U.S. 160, 173, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949).

7. See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

8. United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 340 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952).

pressed that the failure of the Government to deny the use of wiretaps constituted an admission of its use or, at the very least, created a presumption sufficient to raise an issue of fact which made it necessary, under the Rule, for the Court "to receive evidence on the issue of fact necessary to the decision on the motion."

Subsequent to the argument, the United States Attorney, although not retreating from his original position that the moving papers were insufficient, filed an affidavit in which he made the following representations to the Court:

> "No wiretaps were used by the United States Attorney's office or by the Federal Bureau of Investigation in investigation of this case; no investigative leads or evidence were obtained from wiretaps; no evidence emanating directly or indirectly from wiretaps was presented to the Grand Jury; no such evidence is available to the Government and no such evidence will be used in the prosecution of this case. The 'confidential source' herein is not, as defendant Casanova has suggested, a euphemism for 'wiretap'."

▮▮ In view of this categorical denial and the complete absence of any evidential material, however slight, to give support to the defendant's charges, no issue has been presented which requires a hearing for the determination of the motion. If one were compelled under the circumstances here presented, then every defendant in a criminal case could make similar unsupported charges and with equal justification demand a hearing to have the Government disprove them. The burden in the first instance is upon the defendant to establish that his wires had been tapped;[9] and while the Court is aware that generally it is not easy to secure evidence to support the charge, there must be some basis, however slight, to support the demand for a hearing.[10] Here, not a scintilla of evidence has been advanced.

The motion to suppress is denied without prejudice to a renewal upon the trial.

---

9. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Coplon, 185 F.2d 629, 636 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952).

10. See United States v. Weinberg, 108 F. Supp. 567 (D.D.C.1952); United States v. Flynn, 103 F.Supp. 925 (S.D.N.Y. 1951), conviction aff'd, 216 F.2d 354 (2d Cir. 1954), cert. denied, 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955). See also, United States v. Allied Stevedoring Corp., 165 F.Supp. 440 (S.D.N.Y.1958).