**UNITED STATES of America,**
**Appellee,**

v.

**George GILLETTE, Appellant,**
**No. 528, Docket 31409.**

United States Court of Appeals
Second Circuit.

Argued June 28, 1967.

Decided July 17, 1967.

---

Marvin Preminger, Brooklyn, N. Y., for appellant.

James D. Zirin, Asst. U. S. Atty., So. District of New York (Robert M. Morgenthau, U. S. Atty., and Edward Meyer, III, Asst. U. S. Atty., So. District of New York, on the brief), for appellee.

Before WATERMAN and SMITH, Circuit Judges, and LEVET,* District Judge.

J. JOSEPH SMITH, Circuit Judge.

Appellant was convicted after trial by jury in the United States District Court for the Southern District of New York, Edmund L. Palmieri, Judge, of conspiring to violate and violating various al-

* Of the Southern District of New York, sitting by designation.

cohol tax laws relating to the operation of an illegal still and the possession of alcohol without proper tax-stamped package (26 U.S.C. §§ 5178–5180; 5205; 5601, 5602, 5604).[1] On this appeal, appellant claims: (1) the alcohol seized

1. Title 26, United States Code:

§ 5178. *Premises of distilled spirits plants.*

(a) Location, construction, and arrangement.

(1) General.

(A) The premises of a distilled spirits plant shall be as described in the application required by section 5171 (a). The Secretary or his delegate shall prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue.

\* \* \* \* \*

§ 5179. *Registration of stills.*

(a) Requirements.

Every person having in his possession or custody, or under his control, any still or distilling apparatus set up, shall register such still or apparatus with the Secretary or his delegate immediately on its being set up, by subscribing and filing with the Secretary or his delegate a statement, in writing, setting forth the particular place where such still or distilling apparatus is set up, the kind of still and its capacity, the owner thereof, his place of residence, and the purpose for which said still or distilling apparatus has been or is intended to be used (except that stills or distilling apparatus not used or intended to be used for the distillation, redistillation, or recovery of distilled spirits are not required to be registered under this section).

\* \* \* \* \*

§ 5180. *Signs.*

(a) Requirements.

Every person engaged in distilling, bonded warehousing, rectifying, or bottling of distilled spirits shall place and keep conspicuously on the outside of his place of business a sign showing the name of such person and denoting the business, or businesses, in which engaged. The sign required by this subsection shall be in such form and contain such information as the Secretary or his delegate shall by regulations prescribe.

\* \* \* \* \*

§ 5205. *Stamps.*

(a) Stamps or containers of distilled spirits.

(1) Containers of distilled spirits bottled in bond.—

Every container of distilled spirits bottled in bond under section 5233 when filled shall be stamped by a stamp evidencing the bottling of such spirits in bond under the provisions of this paragraph and section 5233.

(2) Containers of other distilled spirits.—

No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof is stamped by a stamp evidencing the determination of the tax or indicating compliance with the provisions of this chapter. The provisions of this paragraph shall not apply to—

(A) distilled spirits, lawfully withdrawn from bond, placed in containers for immediate consumption on the premises or for preparation for such consumption;

(B) distilled spirits in bond or in customs custody;

(C) distilled spirits, lawfully withdrawn from bond, in immediate containers stamped under other provisions of internal revenue or customs law or regulations issued pursuant thereto;

(D) distilled spirits, lawfully withdrawn from bond, in actual process of rectification, blending, or bottling, or in actual use in processes of manufacture;

(E) distilled spirits on which no internal revenue tax is required to be paid;

(F) distilled spirits lawfully withdrawn from bond and not intended for sale or for use in the manufacture or production of any article intended for sale; or

(G) any regularly established common carrier receiving, transporting, delivering, or holding for transportation or delivery distilled spirits in the ordinary course of its business as a common carrier.

(3) Stamp regulations.—

The Secretary or his delegate shall prescribe regulations with respect to the supplying or procuring of stamps required under this subsection or section 5235, the time and manner of applying for, issuing, affixing, and destroying such stamps, the form of such stamps and the information to be shown thereon, applications for the stamps, proof that applicants are entitled to such stamps, and the method of accounting for such stamps, and such other regulations as he may deem necessary for the enforcement of this subsection. In the case of a container of a capacity of 5 wine gallons or less, the stamp shall be affixed in such a manner as to be broken when the container is opened, unless

from the garage at 160 Attorney Street, New York City, pursuant to a search warrant should have been suppressed because the affidavit supporting issuance of the warrant was not based on probable cause; (2) the trial court erred in refusing to grant appellant a suppression hearing to determine, outside the jury's presence, the existence of probable cause; (3) the court erred in refusing to ask the jury panel on voir dire whether they understood the "reasonable doubt" and "presumption of innocence" standards, whether they would "hold out" for acquittal if they believed the government had not met its burden, and whether they felt an accused was guilty merely because he was charged; (4) appellant was prejudiced by the introduction of fingerprint records to verify his handwriting. We find no merit in these claims and affirm the judgment.

Investigators of the Alcohol Tax Unit had appellant, a persistent alcohol tax violator, under surveillance for some time. Following him from his home on Staten Island on his trips at very early morning hours, they found that he travel-

---

the container is one that cannot again be used after opening.

\*     \*     \*     \*     \*

§ 5601. *Criminal penalties.*

(a) Offenses.

Any person who—

(1) Unregistered stills.—

Has in his possession or custody, or under his control, any still or distilling apparatus set up which is not registered, as required by section 5179(a); or

\* \* \*

\*     \*     \*     \*     \*

(4) Failure or refusal of distiller or rectifier to give bond.—

carries on the business of a distiller or rectifier without having given bond as required by law; or \* \* \*

\*     \*     \*     \*     \*

(7) Unlawful production, removal or use of material fit for production of distilled spirits.—

except as otherwise provided in this chapter, makes or ferments mash, wort, or wash, fit for distillation or for the production of distilled spirits, in any building or on any premises other than the designated premises of a distilled spirits plant lawfully qualified to produce distilled spirits, or removes, without authorization by the Secretary or his delegate, any mash, wort, or wash, so made or fermented, from the designated premises of such lawfully qualified plant before being distilled \* \* \*

\*     \*     \*     \*     \*

shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.

§ 5602. *Penalty for tax fraud by distiller.*

Whenever any person engaged in or carrying on the business of a distiller defrauds, attempts to defraud, or engages in such business with intent to defraud the United States of the tax on the spirits distilled by him, or of any part thereof, he shall be fined not more than $10,000, or imprisoned not more than 5 years, or both. No discontinuance or nolle prosequi of any prosecution under this section shall be allowed without the permission in writing of the Attorney General. (Added Pub.L. 85–859, title II, § 201, Sept. 2, 1958, 72 Stat. 1400.)

\*     \*     \*     \*     \*

§ 5604. *Penalties relating to stamps, marks, brands and containers.*

(a) General.—

Any person who shall—

(1) transport, possess, buy, sell, or transfer any distilled spirits, required to be stamped under the provisions of section 5205(a)(2), unless the immediate container thereof has affixed thereto a stamp as required by such section; \* \* \* shall be fined not more than $10,000, or imprisoned not more than 5 years, or both \* \* \*

\*     \*     \*     \*     \*

§ 5681.

(c) Premises where no sign is placed or kept.—

Every person who works in any distillery, or in any rectifying, distilled spirits bottling, or wholesale liquor establishment, on which no sign required by section 5115(a) or section 5180(a) is placed or kept, and every person who knowingly receives at, or carries or conveys any distilled spirits to or from any such distillery, or to or from any such rectifying, distilled spirits bottling, or wholesale liquor establishment, or who knowingly carries or delivers any grain, molasses, or other raw material to any distillery on which said sign is not placed and kept, shall forfeit all vehicles, aircraft, or vessels used in carrying or conveying such property and shall be fined not more than $1,000, or imprisoned not more than 1 year, or both.

\*     \*     \*     \*     \*

ed by circuitous routes, obviously seeking to shake off pursuit, to Brooklyn, across to lower Manhattan, up the West Side, doubling back downtown. After a number of attempts, the agents finally learned his destination to be a garage on Attorney Street on the lower East Side. He was accompanied on his trips by Charles Musillo, another persistent violator. He was seen driving out of the garage a loaded truck which had appeared light when it entered. Agents smelled the odor of fermenting mash through a mail slot in the garage door and from a vent on the rear roof of the garage, where a noise of running motors was heard. A search warrant was obtained, and at about 5:30 one morning appellant was observed to unlock the garage door with a key, appellant and Musillo entering through a small door contained in the large garage door. When the large door was raised, the agents entered and found appellant in the driver's seat of a truck, with the motor running. Both men were arrested, the truck was searched, and 144 gallons of alcohol were found on the truck in glass jugs without tax stamps. Empty sugar bags were also on the truck. Search of appellant had produced keys to a fuse box lock, the rear door of the truck and the garage door. Behind heavy refrigerator type doors in a partition to the rear of the garage was a 1,000 gallon pot column still, four 2,000 gallon mash vats, 3,700 gallons of fermenting mash, tanks, cartons, empty jars, and other distilling equipment. No real question is raised as to the sufficiency of the evidence of the elements of each of the crimes charged, if the arrest and search were legal.

▮ (1) and (2). The United States Commissioner issued the search warrant on the basis of an affidavit, incorporating an annexed sheet, which was sworn to by Investigator Zimmerman.[2] The af-

2. Affidavit for Search Warrant

UNITED STATES DISTRICT COURT
For The
Southern District of New York

UNITED STATES OF AMERICA,
v.
In the Matter of an Application for a Search Warrant Affecting the Premises known as a Garage at 160 Attorney Street, New York, New York.

BEFORE: HON. EARLE N. BISHOPP, United States Court House, Foley Square, New York, N. Y.

The undersigned being duly sworn deposes and says:

That he (is positive)[1] that (on the

[1] The Federal Rules of Criminal Procedure provide: "The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time" (Rule 41(c)).

premises known as) 160 Attorney Street, New York, New York (a garage) in the Southern District of New York there is now being concealed certain property, namely a still and distilling apparatus used for the distillation of distilled spirits, here describe property which are being used as a means of committing a criminal offense, to wit, the possession of an unregistered still and here give alleged grounds for search and seizure distilling apparatus set-up in violation of Title 26, United States Code, Sections 5179(a) and 5601(a),

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Observations and surveillances of the above-described premises by deponent and other investigators of the Alcohol and Tobacco Tax Division on September 23, 24, and 25, 1965, as more fully set forth on the annexed sheet; and the emission of a strong odor of fermenting mash from said premises on September 24 and 25, 1965; information that a certain individual, George Gillette, who was seen to enter said premises on said dates, was operating a still; and a long history of arrests and convictions of Gillette and one Charles Musillo, also seen to enter said premises on said dates, for the unlawful possession of stills; a search of the records of the Treasury Department revealing that no person has registered a still for the said premises.

/s/ DONALD ZIMMERMAN,
*Signature of Affiant.*
Investigator,
*Official Title, if any.*

fidavit in its annexed sheet stated that *two* agents smelled the mash on *two* separate occasions. The smelling of mash alone has often been held sufficient to constitute probable cause of the operation of an illegal still, e. g., Monnette v. United States, 299 F.2d 847, 850 (5th Cir. 1962), United States v. Seiler, 40 F.Supp. 895, 896 (D.Md.1941); and, at the least, is a very strong factor in determining probable cause, United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); see Garhart v. United States, 157 F.2d 777 (10th Cir. 1946); Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (by implication). Anyway, probable cause for the issuance of a warrant is patently present here when the smell of mash is coupled with the sworn statements regarding the evasive activities of appellant and Musillo, both frequent violators of the alcohol tax laws, their presence on the premises, once with a truck which appeared heavily laden on departure, and information apparently anonymously given. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964).

■■ Prior to trial, appellant moved pursuant to Fed.R.Crim.P. 41(e) to suppress the proceeds of the search. The basis of the motion was an affidavit of his attorney alleging that, "Right next door to the subject premises, there is located the Chelsea Pickle Company which emits a vinegar odor stronger than and which would obscure any mash odor." Judge Thomas F. Murphy's pretrial denial of the motion without a hearing was repeated by Judge Palmieri at trial. For the purposes of decision in Rugendorf v. United States, 376 U.S. 528, 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), the Supreme Court assumed that an attack might be made on a search warrant valid on its face which was supported by an affidavit establishing probable cause. See generally, United States v. Hasley, 257 F.Supp. 1002 (S.D.N.Y. 1966). Although we have repeatedly stated that "outright perjury by government agents is not a common occurrence," United States v. Tucker, 380 F.2d 206, at page 212 (2d Cir. June 28, 1967), we by no means foreclose the possibility that, in the appropriate circumstances, a hearing should be held to establish the veracity of sworn allegations in an affidavit which is adequate on its face. See, United States v. Freeman, 358 F.2d 459, 463 n. 4 (2d Cir. 1966). The case at hand, however, does not present such circumstances. The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct. Cheng Wai v. United

Sworn to before me, and subscribed in my presence, September 27, 1965.

/s/ EARLE N. BISHOPP,
*United States Commissioner.*

Sheet Annexed to Affidavit for
Search Warrant

1. Between September 1 and September 25, 1965, and between the hours of 5:00 A. M. and 6:00 A. M., agents of the Internal Revenue Service observed George Gillette and Charles Musillo, both previously convicted for the unlawful possession of stills, driving together from Staten Island to the vicinity of a commercial garage at 160 Attorney Street, New York, New York, using circuitous routes.

2. On September 23, 1965, Musillo was observed to enter said garage at about 5:45 A. M.

3. On September 24, 1965, Musillo was observed to enter said garage at about 5:45 A. M. and Gillette was thereafter observed to drive into the garage a Hertz-rented truck which was thereafter driven out of the garage appearing heavily-laden.

4. On September 24, 1965, two agents of the Internal Revenue Service smelled a strong odor of fermenting mash emitting from the same garage.

5. On September 25, 1965, Musillo was again observed to enter the garage about 5:45 A. M. and to depart about 2:15 P. M.

6. On September 25, 1965, two agents of the Internal Revenue Service again smelled a strong odor of fermenting mash emitting from the same garage.

/s/ DONALD ZIMMERMAN

States, 125 F.2d 915 (2d Cir. 1942); United States v. Casanova, 213 F.Supp. 654 (S.D.N.Y.1963). Furthermore, it developed at trial that Zimmerman smelled the mash through a mail slot and from a vent in the roof; so, even had the attorney's affidavit been sufficient, it is highly doubtful that appellant could have proved that the pickles outsmelled the mash.

■ (3). The trial court has wide discretion in examining prospective jurors. United States v. Bowe, 360 F.2d 1, 9 (2d Cir.), cert. denied 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); United States v. Dennis, 183 F.2d 201, 222 (2d Cir. 1950), aff'd 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). We find no abuse of that discretion here. The cases which appellant cites to show that the instant refusal to ask certain questions was an abuse of discretion lend him no support. Grandsinger v. United States, 332 F.2d 80 (10th Cir. 1964) (per curiam), did not hold such refusal to ask whether the jurors understood the reasonable doubt and presumption of innocence concepts proper only when the panel was instructed as to these standards but rather that the court need not so inquire when it refers to these concepts and, as here, later charges in detail. Wolfe v. Nash, 205 F.Supp. 219, 225 (W.D.Mo.1962), aff'd 313 F.2d 393 (8th Cir.), cert. denied 374 U.S. 817, 83 S.Ct. 1713, 10 L.Ed.2d 1041 (1963), did not intimate that the refusal to ask whether the jurors would "hold out" was proper only when the panel was generally asked this question, but rather that such questions were improper in view of a juror's right to change his mind and duty to reconsider his initial impressions, as well as the presumption that jurors will obey the court's instructions concerning reasonable doubt. See also, Gorin v. United States, 313 F.2d 641, 647 (1st Cir.), cert. denied 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963), not cited by appellant, which discusses the proper conduct of voir dire, holding that the refusal to ask particular questions such as those

in issue here, including refusal to ask whether the jurors would presume guilt from the accusation, was not an abuse of discretion. We agree.

■ (4). Any possible prejudice derived from the reference to fingerprint cards was minimized by the excision in the exhibit of all but the handwriting and the court's charge to disregard any reference to fingerprints. Cf. Delli Paoli v. United States, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). In the absence of any stipulation that defendant had signed the cards, expert testimony as to the signature on the fingerprint cards was properly allowed to establish by handwriting comparison the identity of appellant as the renter of a Hertz truck used in the operation. No other contentions of appellant merit discussion.

Judgment affirmed.