**UNITED STATES of America**

v.

**John Edward JONES also known as "Liddy".**

Crim. No. 72-0592-N.

United States District Court,
D. Maryland.

May 7, 1973.

George Beall, U. S. Atty., D. Md., and Charles L. Weintraub, Baltimore Strike Force, U. S. Dept. of Justice, for plaintiff.

Gerald Kroop, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

NORTHROP, Chief Judge.

John Edward Jones, also known as "Liddy" Jones (hereinafter referred to as "Liddy"), has been charged with receipt of a firearm by a convicted felon in violation of 18 U.S.C. Appendix § 1202(a)(1). He has filed a Motion to Suppress and Exclude Evidence. As grounds therefor, defendant alleges that the affidavit in support of the search warrant does not show probable cause, in that:

(a) it fails to demonstrate the reliability of the informant, and

(b) fails to properly state the underlying circumstances from which the informant concluded that criminal activity was taking place.

The parties have stipulated that the Court consider defendant's Motion on the basis of the respective affidavits and legal memoranda without a hearing.[1]

The affidavit which defendant challenges reveals that two experienced detectives, especially trained in detecting violations of the narcotics laws observed certain activities and obtained information from "reliable informants," which led the detectives (who are the affiants) to believe that Liddy was engaging in the sale and distribution of contraband narcotics. One informant (# 241) had, on a prior occasion, furnished information which led to the seizure of $53,000 worth of heroin. The informant had been addicted to heroin for a period in excess of five years and is apparently familiar with its distribution, manufacture, and use. Informant # 241 revealed that Liddy will rarely handle any drugs, but is present when the heroin is being "cut" (adulterated), and that it is usually stored in the homes of Liddy's female associates.

---

1. Defense counsel subsequently informed this Court that the defendant wished to have an evidentiary hearing, not on the substantive issue of the sufficiency of the affidavit, but, rather, to challenge the truthfulness of the information presented in the affidavit. The Court heard oral arguments on this point, with the defendant present. The motion to hold a hearing was denied. Whether a defendant is entitled to an evidentiary hearing in order to challenge the veracity of an affidavit is still somewhat of an open question, Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). In an appropriate case there may be a right to such a hearing, as where a substantial proffer has been made to dispute the truthfulness of the allegations in the affidavit. *See* United States v. Dunnings, 425 F.2d 836 (2d Cir. 1966); United States v. Gillette, 383 F.2d 843 (2d Cir. 1966); United States v. Suarez, 380 F.2d 713 (2nd Cir. 1967); King v. United States, 282 F.2d 398 (4th Cir. 1960); United States v. Halsey, 257 F. Supp. 1002 (S.D.N.Y.1966).

Although the defendant would attempt to demonstrate the falsity of some of the information related in the affidavit, by his counsel's own admission, even assuming the falsity of the particular information, it is not directed at the critical aspects of the affidavit and is mostly irrelevant. Under these circumstances, a hearing would have been superfluous, since defendant's proffer was made with specificity, and was *so insignificant as to* lack any substance.

At one point, while the affiants were watching Liddy on the street, he noticed them and then approached them and said: "You got all my stuff that last bust. You guys are smarter than I thought you were. I'm moving my whole organization to Baltimore County."

The affiants, after some investigation, came to believe that Liddy's brother's home at 18 Kittridge Court, Randallstown, Maryland, was property owned by Liddy. Another "reliable informant" (# 255) informed the affiants that Liddy will often park his white 1972 Cadillac at 3319 Ripple Road, his purported address, and then use another car to give the impression that he is located where the Cadillac is parked, but that he really lived at 18 Kittridge Court, Randallstown, Maryland. Although the home had been purchased in the name of Liddy's brother, the latter had never been observed at the premises during affiants' entire investigation. Informant # 255 had readily admitted "a prior involvement in the upper echelon of the heroin trafficking in Baltimore City, in the past six years." Some of his information was corroborated by the affiants' personal observation.[2] Informant # 255 told the affiants that Liddy keeps a supply of cocaine at 18 Kittridge Court for his own use, where he observed Liddy snorting cocaine. The informants' information, coupled with affiants' personal surveillance and observation of defendant's activities, and in particular his suspicious attempt to create the impression of not living at 18 Kittridge Court, led to the issuance of a search warrant to search those premises.

The question of informants' reliability and information in an affidavit to justify a finding of probable cause by a Magistrate has been expounded upon by the Supreme Court of the United States in the *Aguilar-Spinelli-Harris* trilogy. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968); United States v. Harris, 403 U.S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971). The affidavit in question must be analyzed under these decisions.

## I.

In Aguilar v. State of Texas, *supra,* a search warrant was issued on the basis of the following affidavit:

Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law. [378 U.S. at 109, 84 S.Ct. at 1511].

The affidavit did not recite that the affiant had any personal knowledge of the activities reported. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), had already established that an affidavit cannot be based upon "a mere affirmation of suspicion and belief without any statement of adequate supporting facts." 290 U.S. at 44, 54 S.Ct. at 13. As in *Nathanson,* no supporting facts were presented in the affidavit in *Aguilar,* and the high Court found it insufficient:

The vice in the present affidavit is at least as great as in *Nathanson* . . . . Here the "mere conclusion" that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," it does not even contain an "affirmative allegation" that the affiant's unidentified source "spoke with personal knowledge." For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not "judge for himself the persuasiveness of the

---

2. The affidavit's information will be discussed at greater length and in more detail later on.

facts relied on * * * to show probable cause." He necessarily accepted "without question" the informant's "suspicion," "belief" or "mere conclusion." 378 U.S. at 113–114, 84 S.Ct. at 1513–1514.

Thus, the majority in *Aguilar* viewed the affidavit there presented as a *Nathanson*-type affidavit.[3] The Court set up a standard to determine the sufficiency of an affidavit, which has subsequently become known as the two-pronged test:

> [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, . . . [and]
>
> [S]ome of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was "credible" or his information "reliable." [378 U.S. at 114, 84 S.Ct. at 1514].

The Supreme Court thus promulgated a twofold requirement as criteria: first, the basis for the informant's conclusion must be stated; and second, the reliability of the informant must be shown.

"Believing it desirable that the principles of *Aguilar* should be further explicated," Spinelli v. United States, *supra*, 393 U.S. at 412, 89 S.Ct. at 587 (1969), the Supreme Court amplified the *Aguilar* test in the *Spinelli* decision. There, a search warrant was issued on the basis of an affidavit which stated that 1) the FBI had been informed by a confidential reliable informant that Spinelli was conducting illegal gambling activities by means of two specified telephones, and 2) the FBI observed Spinelli check in and out of the apartment in which these telephones were located. The affidavit further stated that Spinelli was a known bookmaker. The Court applied the *Aguilar* criteria to test this affidavit and found it insufficient. First, the majority concluded that "[t]hough the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion." 393 U.S. at 416, 89 S. Ct. 589. Second, the majority concluded that "the tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation." Thus, the Court reaffirmed *Aguilar* and found that the twofold requirement was not met; the basis for the informant's conclusion of criminal activity was not given and the informant's reliability was not established. The high Court found that the *Aguilar* test was not met and could have simply rested its decision on that ground. Yet, the Court went on to further explicate upon *Aguilar*. The Court declared:

> If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information . . . should then be considered. [393 U.S. at 415, 89 S.Ct. at 588].

It was held, in effect, that a warrant affidavit found defective under *Aguilar* might nevertheless pass constitutional muster, if supporting information in the affidavit buttress an otherwise unacceptable informant's tip. Examining the supporting information in the *Spinelli* affidavit, the Court concluded that,

> the allegations detailing the FBI's surveillance of Spinelli and its investigation . . . contain no suggestion of criminal conduct when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip. [393 U. S. at 418, 89 S.Ct. at 590].

Although the Court found the *Spinelli* affidavit insufficient, it amplified *Aguilar* by providing that independent information, in an affidavit which fails to

---

3. Justices Clark, Black and Stewart dissented, stating that unlike in *Nathanson*, the affidavit in *Aguilar* "was based not only on 'affirmance or belief' but in addition upon *'reliable information* from a credible person . . . .'" 378 U.S. at 118, 84 S.Ct. at 1516.

meet the *Aguilar* test, may cure the defective affidavit if the information provides independent corroboration of the criminal activity.[4] The significance of that amplification lay not so much in a new and broader standard of probable cause to issue a search warrant, but in demonstrating that the Supreme Court was itself still conducting a search—a search for a meaningful standard. The Court could have rested its decision on the finding that the *Spinelli* affidavit failed to meet the *Aguilar* criteria. Yet the Court chose to further explicate upon *Aguilar*.

That the high Court was searching for a meaningful standard became apparent in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). There, the Court granted *certiorari*,

> to consider the recurring question of what showing is constitutionally necessary to satisfy a magistrate that there is a substantial basis for crediting the report of an informant known to the police, but not identified to the magistrate, who purports to relate his personal knowledge of criminal activity. [403 U.S. at 575, 91 S.Ct. at 2078].

The affidavit which served as a basis for the issuance of a search warant in *Harris* recited that the affiant received information by way of interview from an informer he found to be a prudent person; that said informer had personal knowledge of illegal trafficking in non-tax-paid whiskey by Harris; and that he, the informer, had purchased illicit whiskey from Harris. The affidavit further recited that Harris had a reputation of dealing in illicit distilled spirits and that illicit whiskey was located in an abandoned house under Harris' control. The Court of Appeals for the Sixth Circuit concluded that the affidavit was insufficient because the magistrate was not provided with information to enable him to evaluate the informant's reliability or trustworthiness. 412 F.2d 796, 797 (1969). The Appellate Court further found that independent corroboration of the informant's tip was lacking. Thus, the Court of Appeals for the Sixth Circuit determined that the *Harris* affidavit stopped short of meeting the *Aguilar-Spinelli* criteria. The Supreme Court reversed, holding that,

> the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled with affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant. [403 U.S. at 580–581, 91 S.Ct. 2080].

The following factors were determinative in the Court's decision:

1) that the informant's accusation was against his penal interest;

2) that the affidavit related personal observations by the informant; and

3) the policeman's knowledge of the suspect's reputation.[5]

4. The independent information in *Spinelli*, provided by FBI surveillance, reflected "only innocent seeming activity and data." 393 U.S. at 414, 89 S.Ct. at 588. Justices Black, Fortas and Stewart dissented. Justice Black declared:
   > In my view, this Court's decision in *Aguilar* . . . was bad enough. . . . The Court today expands *Aguilar* to almost unbelievable proportions. . . . Nothing in our Constitution, however, requires that the facts be established with that degree of certainty and with such elaborate specificity before a policeman can be authorized by a disinterested magistrate to conduct a carefully limited search. [393 U.S. at 429, 89 S.Ct. at 595].
   Interestingly, Justice Blackmun was a member in the 6–2 majority of the United States Court of Appeals for the Eighth Circuit which upheld the affidavit in Spinelli. 382 F.2d 871 (1969).

5. We cannot conclude that a policeman's knowledge of a suspect's reputation— something that policemen frequently know and a factor that impressed such a "legal technician" as Mr. Justice Frankfurter—is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may prop-

There was no dispute in *Harris* that the affidavit met the first *Aguilar-Spinelli* test. The question was whether there existed sufficient independent factual basis to corroborate the informant's trustworthiness or reliability. Finding the three factors enumerated above sufficient indicia of the reliability of the informant's tip, the plurality opinion sustained the constitutional propriety of the affidavit. The Court emphasized that technical legal requirements are unnecessary (403 U.S. at 579, 91 S.Ct. at 2080) because,

> the issue in warrant proceedings is not guilt beyond a reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises. [403 U.S. at 584, 91 S.Ct. at 2082].

Common sense would be the yardstick, and not technical requirements of elaborate specificity. In that connection, hearsay information may be considered by the magistrate. 403 U.S. at 577, 91 S.Ct. at 2079. *See also* United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The affidavit in the case at bar must be analyzed within the framework of the *Aguilar-Spinelli-Harris* trilogy as heretofore discussed.

Informer # 241 related that Liddy stored heroin in the homes of his female associates. 18 Kittridge Court, the searched premises, were not premises belonging to or inhabited by any of Liddy's female friends. That source of information clearly failed to provide a sufficient factual basis for a finding of probable cause to search those premises. The discussion must turn on Informer # 255, keeping in mind the information related by # 241.

Informer # 255 stated that he visited the premises at 18 Kittridge Court, where he saw Liddy snorting cocaine, and noticed that Liddy stores a supply of cocaine there for his own personal use. That information alone suffices to meet the first *Aguilar-Spinelli* test. Personal observation of the illegal activity by the informant informs a magistrate of the circumstances leading the informant to conclude that the narcotics were where he claimed they were. Aguilar v. State of Texas, *supra. See* United States v. Manning, 448 F.2d 992, 997 (2d Cir.) *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971).

Informer # 255 has admitted prior involvement in the upper echelon of heroin trafficking in Baltimore City. Coupled with the other information in the affidavit (as heretofore discussed), was that admission sufficient to meet the second *Aguilar-Spinelli* test? Harris teaches us that it is sufficient. The admission was against the informer's penal interest. The affidavit related personal observation by the informer, and the affiant knew of Liddy's reputation in narcotics trafficking. These are the precise factors which led the *Harris* Court to conclude that the second *Aguilar-Spinelli* test had been met.

## II.

Additional, and perhaps independent, considerations exist to support a determination that the affidavit in question proffered ample factual basis for a finding of probable cause.

Informer # 241 had, on a previous occasion, furnished information which led to the seizure of $53,000 worth of heroin. He stated that Liddy stores heroin in the homes of his female associates. One such female associate, Brenda Pinkett, lived at 3703 Trent Road. Informer # 255 stated that Liddy stores drugs at that address. Affiants placed those

erly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and

we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation. [403 U.S. at 583, 91 S.Ct. at 2081–2082].

premises under observation. On May 23, 1972, they observed Liddy with a male companion, a known narcotics dealer, and an unknown female companion, enter the premises.[6] Affiants heard Liddy say to his male companion, "Hurry up with that stuff, I want to have it 'whacked up' before daylight." ("Whacked up" is colloquial for adulteration of heroin with other substances). These observations corroborated the truthfulness of Informers 241 and 255. Informer # 255, who admitted to prior involvement in the upper echelon of drug trafficking in Baltimore, stated that he visited 18 Kittridge Court, where Liddy apparently lived, and there saw Liddy snorting cocaine. The affidavit thus reflects personal observations of illegal activity at specific premises by an informer whose credibility had been independently established through police surveillance and investigation. That such an affidavit meets the *Aguilar-Spinelli-Harris* requirements has already been established. Assuming *arguendo*, however, that the informer's tip lacked trustworthiness, this Court is of the opinion that police surveillance and investigation provided probative indications of criminal activity along the lines suggested by the informants, to sustain a finding of probable cause. *See* Rebell, Comment: The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703 (1972). In United States v. Canieso, 470 F.2d 1224 (2d Cir. 1972), Judge Friendly declared that probable cause may be found,

[w]hen a tip not meeting the *Aguilar* test has generated police investigation and this has developed significant corroboration or other *"probative indications of criminal activity* along the lines suggested by the informant" . . . . [470 F.2d at 1231].

Judge Friendly's opinion, in light of his analysis of *Harris*, provides a more meaningful and ascertainable standard of probable cause.[7] As long as the informer's tip is corroborated by probative indications of criminal activity, generated by police investigation, probable cause would seem to exist. This is constitutionally realistic for the focus is upon the suspect's criminal activity rather than upon the informer's reliability. It is a more logical standard which also provides protection from the untruthful or unreliable informer, because if the informer has fabricated a false "tip," police investigation is unlikely to reveal criminal activity and a warrant will not issue. "[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, *supra*, 380 U.S. at 108, 85 S.Ct. at 746, cited with approval in *Harris*, 403 U.S. at 577, 91 S.Ct. at 2079 (1971).

Defendant seeks to distinguish *Canieso*, on the grounds that here, unlike in *Canieso*, "the police observations in no way relate directly in time or place to the informant's tip." It is true that in *Canieso* suspicious activitiy was observed by the police more closely. However, unlike the defendants in *Canieso*, here the defendant, Liddy, knew he was being observed by the police, and therefore had to take greater precautionary measures to hide his criminal activity.

6. The Government, in a written statement submitted to this Court and to the defendant, during the oral presentation to determine if a hearing need be held on the challenge to the veracity of the affidavit, stated that this known narcotics dealer, Charles Deroy Marks, if asked to testify, would state that neither he nor the defendant were cutting heroin at that address on that date. Even if true, that would not place the validity of the search warrant in doubt. The Supreme Court,

in Rugendorf v. United States, 376 U.S. 528, 533, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964), stated that inaccurate or incorrect information which is only of peripheral relevancy to the showing of probable cause does not go to the integrity of the affidavit.

7. Due deference must be given to Mr. Rebell, upon whose article Judge Friendly expostulated.

That, in no way diminishes probable cause.

### III.

Wholly apart from the discussion of the Supreme Court progeny spawned by *Aguilar* the affidavit in question may be sustained. In formulating the two-pronged test in *Aguilar,* as an example of a proper affidavit, the Court cited the affidavit it upheld in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960). That case was revitalized in United States v. Harris, *supra,* 403 U.S. at 581, 91 S.Ct. at 2081; *see* United States v. Squella-Avendano, 447 F.2d 575, 579 n. 18 (5th Cir. 1971).

The affidavit in *Jones* read as follows:

In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [sic] in the above mentioned places. The last time being August 20, 1957.

Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.

This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has been given to the undersigned and to other officers of the narcotic squad by other sources of information.

Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasions and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [sic] in the above apartment by Cecil Jones and Earline Richardson.

The informant in the above affidavit stated that he personally purchased narcotic drugs from the suspects. This personal involvement seems to have satisfied the first requirement of the two-pronged test. The informant's reliability was established by a recitation of a previous tip of illicit narcotic drugs activity. That seemed to meet the second requisite of the two-pronged test.

The affidavit here closely parallels the one above. Both affidavits recount personal observations of criminal activity by an unidentified informant whose reliability had been established in the past. *See* United States v. Harris, *supra,* 403 U.S. at 578, 91 S.Ct. at 2080. Moreover, independent police investigation corroborated the existence of criminal activity.

This Court concludes, therefore, that the search warrant was properly issued because the affidavit provided a sufficient basis for a finding of probable cause.

For the reasons hereinabove set out, it is, this 7th day of May, 1973, ordered that defendant's Motion to Suppress and Exclude Evidence be and the same hereby is denied.