**UNITED STATES of America**

v.

**Miguel MUNOZ, a/k/a "Beeper", Rodolfo Rodriguez, Enrique Houellemont, a/k/a "Ereppa", Daniel Bretton, a/k/a "Raoul", Cristo Rey Ramirez–Pena, a/k/a "Bacalao", Victor Alberto Gil, a/k/a "Vitico", Nelson Omar Tabar–Laro, Hector Garcia, a/k/a "Jabao", Pedro Pizzarro, a/k/a "Bolin", and Marilyn Montalvo, a/k/a "Ramona Munoz", Defendants.**

**Nos. S 90 Cr. 15 (RPP).**

United States District Court, S.D. New York.

Nov. 16, 1990.

On Motion for Severance Nov. 20, 1990.

See also 748 F.Supp. 167.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Patrick Fitzgerald and Karen Patton, Asst. U.S. Attys., for the Government.

Ivan S. Fisher, New York City, for defendant Miguel Munoz.

Orden & Cohen, New York City by Joel Cohen, for defendant Rodolfo Rodriguez.

Ira D. London, New York City, for defendant Enrique Houellemont.

Martin Geduldig, Hicksville, N.Y., for defendant Daniel Bretton.

Harriet B. Rosen, New York City, for defendant Cristo Rey Ramirez–Pena.

Mordkofsky, Goldstein & Weinstein, Bronx, N.Y. by Barry Weinstein, for defendant Victor Alberto Gil.

Michael Bachner, New York City, for defendant Nelson Omar Tabar–Laro.

Thomas D. White, New York City, for defendant Hector Garcia.

Charles Brown, New York City, for defendant Pedro Pizzarro.

Goltzer & Adler, New York City by Charles D. Adler, for defendant Marilyn Montalvo.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

Defendants Miguel Munoz ("Munoz") and Marilyn Montalvo ("Montalvo," a/k/a "Ramona Munoz"), joined by all the remaining defendants, move pursuant to Rules 41 and 12(b)(3) of the Federal Rules of Criminal Procedure to suppress evidence obtained as a result of a search conducted on February 6, 1990 by agents of the Federal Bureau of Investigation ("FBI"), and for an evidentiary hearing in connection therewith. The Court heard oral argument on the motion to suppress evidence on October 22, 1990. For the reasons set forth below the motion is denied.

## BACKGROUND

The relevant facts are as follows:

On December 26, 1989, following several days of investigation of an alleged kidnap-

ping, FBI agents arrested most of the defendants. Defendants are alleged to be drug dealers who had kidnapped another drug dealer, Rafael Gonzalez ("Gonzalez") to recover money he owed them. Defendants Cristo–Rey Ramirez–Pena ("Ramirez–Pena") and Hector Garcia ("Garcia") were arrested shortly after they left a house at 4217 Katonah Avenue, Bronx, New York (the "House"), together with Gonzalez. Shortly thereafter, FBI agents arrested defendant Victor Alberto Gil ("Gil") at the House and entered the House.

In support of the application for the search warrant executed on February 6, 1990, Special Agent Robert Daniel Shea ("Agent Shea") submitted an affidavit dated February 2, 1990. Agent Shea's affidavit stated that during debriefings subsequent to December 26, 1989, Gonzalez had advised him that he had distributed cocaine for defendant Rodolfo Rodriguez ("Rodriguez") for approximately six months prior to December 1989; that Gonzalez had had 2 kilos of cocaine stolen from him; that after he had advised Rodriguez of this "problem" he was held captive by Rodriguez, Munoz and others, primarily at the House; that during the time of Gonzalez' captivity, December 21, 1990 to December 26, 1990, a number of telephone calls from various persons were made to Gonzalez' relatives, making threats and demanding money; that, while Gonzalez was held at the House, defendants Ramirez–Pena, Munoz, Gil, Garcia, Tabar–Laro, Houellemont and Montalvo made statements threatening Gonzalez and his family directly or by implication, and that, while Gonzalez was at the House, defendants Munoz and Gil discussed drug deals and prior kidnappings. Shea Aff., February 2, 1990, 2–6.

Agent Shea's affidavit then recounted the circumstances of the events leading up to the arrest on December 26, 1990 of defendant Rodriguez in the company of Gonzalez' brother, and of defendants Munoz, Houellemont and Tabar–Laro near 180th Street and Audubon Avenue in Manhattan.[1] Agent Shea's affidavit also set forth that law enforcement agents freed Gonzalez after he left the House in the company of two defendants who were arrested,[2] and that upon his release Gonzalez told those agents there were more people in the House. Three agents then, "based on the exigent circumstances of the kidnapping," arrested defendant Gil as he was leaving the House, entered the House and observed another male, Raoul (Last Name Unknown, "LNU"), who was not apprehended at the time, dive through a second story window and escape through Woodlawn Cemetery. Agent Shea then stated "As the agents were not armed with a warrant, only a 'protective' or 'security sweep' of the House was conducted and no items were seized."[3] Shea Aff. at 8, n. 3. The Shea affidavit further recited that after arrest defendant Gil advised that the House is owned by defendants Montalvo and Rodriguez, and that Bolin Munoz and Raoul (LNU), as well as defendants Munoz, Garcia, and Ramirez–Pena, often stay at the House.

In making application for the search warrant, Agent Shea's affidavit went on to point out, based on his experience and the nature of certain events recounted by Gonzalez, that evidence of Gonzalez' captivity and material relating to the identity and whereabouts of several co-conspirators not yet arrested were likely to be found at the House, that most of the co-conspirators who were arrested had been remanded and thus had not been in a position to remove evidence from the House, and that those persons who might have attempted to sanitize the House might not have appreciated

---

1. These facts recited in Agent Shea's affidavit are set forth in detail in this Court's opinion of August 10, 1990.

2. These defendants are Garcia and Ramirez–Pena.

3. A "security sweep" is a search of the premises immediately following an arrest, to check for

other "persons who may destroy evidence or pose a threat to the officers," which is permitted without a warrant. *United States v. Agapito,* 620 F.2d 324, 335 (2nd Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). *See also, United States v. Jackson,* 778 F.2d 933 (2nd Cir.1985).

the evidentiary value of many of the items sought. Shea Aff. at 9, n. 4.

Defendants' motion to suppress and for an evidentiary hearing is based on two affidavits, one dated September 14, 1990 by Ivan S. Fisher, attorney for defendant Miguel Munoz, and one dated September 13, 1990 by Ramona Munoz, also known as defendant Marilyn Montalvo (the "Munoz/Montalvo affidavit").

Defendant Munoz/Montalvo's affidavit states she was told that the FBI agents entered the House where she lived on December 26, 1990; that she was not at the House at the time they entered the House and that she did not return to the House until December 28, at which time she found the door locked and had to use her keys. Defendant Munoz/Montalvo then states that to the best of her knowledge, nobody other than the FBI agents had been in the House since the arrest on December 26, 1989, and that there was no indication of a robbery as nothing of value had been taken. She states, however, that her dresser drawers were open and clothes removed and thrown on the bed. Laundry bags full of clothes were also emptied on the bed; mail left in the kitchen and den had been placed on the living room table; and flowers had been removed from vases and strewn on the furniture. In the attic, shoes, sheets and curtains, which had been neatly put away, were lying in disarray on the floor. Munoz/Montalvo Aff. at 2. She then concludes that the FBI agents had searched her House on December 26. *Id.* at 3.

Attorney Fisher's affidavit utilizes the Munoz/Montalvo affidavit and inadmissible hearsay information to offer the conclusion that an illegal search of the House had been conducted by the agents on December 26, and not a security sweep; that the search was not justified by exigent circumstances; and that the February 2, 1990 search warrant application by Agent Shea contained information derived from the December 26, 1990 "search" and was therefore tainted. Fisher Aff. at 2.

In reply, the government submits a second affidavit by Agent Shea stating that he made the application for a search warrant without knowledge of any item seen by the agents who entered the House on December 26, 1989 other than a photograph of a woman on the wall of the living room (upon which he placed no reliance); that the delay in the application for a search warrant was due to Gonzalez' need for counsel and the time required for Gonzalez to reach an agreement with the Government; that his application was based wholly on his debriefing of Gonzalez and his own experience in similar cases; and that in that debriefing no one inquired about any items that were seen by the agents on December 26, 1989. Shea Aff. of November 5, 1990 ("second Shea affidavit"). The Government also submits affidavits of Special Agents Thomas Neer and Joseph Sconzo, two of the three FBI agents who entered the House on December 26, 1989, stating that they took part in a security sweep, "looking only in places where persons might have been hiding," and that a "search" of the premises was not conducted on that occasion. Aff. of Thomas Neer, November 5, 1990; Aff. of Joseph Sconzo, November 5, 1990. Defendants submit in reply an affidavit of Charles Kelly, an investigator employed by the defense, which infers, based on hearsay information, that the actions of the FBI agents on December 26, 1989 constituted an illegal search. Kelly Aff., November 13, 1990.

## DISCUSSION

Defendants' motion to suppress is based on two contentions: (1) the warrant was invalidly issued because it is the fruit of an earlier impermissible search and illegal eavesdropping, and (2) the warrant was invalidly issued because information on which it was based was too stale and misleading for a warrant to issue.

A review of Agent Shea's affidavit of February 2, 1990 offers no support for defendants' contention that it was based to any degree whatsoever on the warrantless entry of the House conducted by the FBI following Gil's arrest. Rather, the application for a search warrant is stated to have been based on the debriefings of

Gonzalez and Agent Shea's conclusions as an experienced investigator that evidence which would corroborate Gonzalez's account of occurrences between December 21, 1989 and December 26, 1989 was likely to be on the premises. Shea Aff. at 2, n. 1, and at 9–15, Paragraphs 10–12. Accordingly, there is no indication that the Magistrate's decision to issue the warrant was based on observations made during the warrantless entry on December 26, 1989. The second Shea affidavit confirms that the determination to seek a search warrant was in no way prompted by anything the agents might have seen during the warrantless entry of the House on December 26, 1990. Nothing in defendant Munoz/Montalvo's or Mr. Fisher's supporting affidavits contains an explicit contradiction of the facts stated by Agent Shea or provides evidence of a causal link between the warrantless entry of the House and the February 6, 1990 discovery of the challenged evidence pursuant to the search warrant. The Munoz/Montalvo affidavit represents only a conclusion from observations on December 28, 1989 that an illegal search had occurred during the warrantless entry.[4]

Because the application for a search warrant shows no causal link between the December 26 warrantless entry and the application for a search warrant, and defendants' affidavits make no showing of such a causal link, the motion to suppress and request for an evidentiary hearing are denied. *Murray v. U.S.*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Defendants have not made the substantial showing that Agent Shea's affidavits were knowingly and intentionally false or demonstrated a reckless disregard for the truth, or that the facts claimed to be false were necessary to the Magistrate's finding of probable cause required in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In fact, defendants have made no showing relevant to the probable cause allegations supporting the search on February 6, 1990. Whether defendant Gil was arrested inside or outside the House on December 26, 1989 and whether a legal security sweep or an illegal search occurred on that date are irrelevant to whether there was probable cause for issuance of a warrant for the search on February 6, 1990.

■ Secondly, the Court does not find the defendants have made the requisite showing that an illegal search by law enforcement agents occurred on December 26, 1990. Defendant Gil's arrest outside the House as admitted by the government does not mean the agents conducted an illegal search. A security sweep in order to arrest other conspirators does not necessarily constitute an illegal search. *See, e.g., United States v. Jackson*, 778 F.2d at 937. Evidence of clothes and flowers in disarray does not mean that the agents were responsible for the disorder or that they illegally searched the House.[5] Defendant Munoz/Montalvo's affidavit does not state when she had last been in the House. Defendant Gil, Raoul (LNU) and others had been in the House after she left it. According to Gonzalez and Gil, other persons used the House on a regular basis. Under these circumstances, defendants have not offered specific detailed and non-conjectural facts sufficient for this Court to conclude a substantial claim is present that, in contradiction of the agents' affidavits, the agents were responsible for the conditions described by Ms. Munoz/Montalvo. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983); *United States v. Migely*, 596 F.2d 511, 513 (1st Cir.1979), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979). Lastly, the Kelly affidavit is not based on personal knowledge of

---

**4.** Defendants' contention that illegal bugging of the premises was utilized in connection with the application for a search warrant is rejected as no allegations based on personal knowledge are made to support it. *U.S. v. Gillette*, 383 F.2d 843, 848–49 (2d Cir.1967).

**5.** Indeed, the agents would seem to have had adequate grounds to assume that exigent circumstances justifying a security sweep of the House existed, in view of the information received from Gonzalez upon his release that members of the kidnapping group were still in the House. Shea Aff. of February 2, 1990; Neer Aff. at 2; Sconzo Aff. at 1.

the circumstances of the December 26 entry or sweep of the House and is unsupported by any affidavit of any other person who does have such knowledge. In view of the affidavits submitted by the agents who took part in the sweep and do have firsthand knowledge thereof, the Kelly affidavit does not raise a factual issue sufficient to entitle defendants to a suppression hearing. *United States v. Gregory*, 611 F.Supp. 1033, 1044 (S.D.N.Y.1985).

■ The claim that the information upon which the search warrant was based was too stale and misleading to support the valid issuance of a search warrant is illfounded. The second Shea affidavit sets forth adequate reasons for the delay in the application and the alleged "misleading" portions of the affidavit of February 2, 1990 were not necessary to support the issuance of the warrant by the Magistrate.

The motion is denied.

IT IS SO ORDERED.

### ON MOTION FOR SEVERANCE

Defendant Cristo–Rey Ramirez–Pena ("Ramirez–Pena") moves for severance pursuant to Fed.R.Crim.P. 14. In support of his motion, he submits an affirmation of counsel which refers the Court to the memorandum of law submitted by defendant Enrique Houellemont in support of his own motion for severance. Ramirez–Pena has raised no new issues of law or fact sufficient to justify severance. Accordingly, for the same reasons that this Court denied the motions for severance of defendant Houellemont and other defendants, in its Opinion dated July 20, 1990 and other opinions in this case, the motion for severance is denied.

IT IS SO ORDERED.